UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

LORI VAUGHN,                    )
                               )
            Plaintiff,         )
                               )
v.                             )          No. 3:15-CV-228-PLR-DCP
                               )
PARKWEST MEDICAL CENTER,       )
                               )
            Defendant.         )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the referral Order [Doc. 101] of the District Judge.

Now before the Court are Plaintiff Lori Vaughn's Motion for Prejudgment Interest [Doc. 95] and Motion for Attorney['s] Fees and Litigation Expenses [Doc. 97]. Defendant responded in opposition to the Motion for Prejudgment Interest [Doc. 103], and Plaintiff subsequently filed a reply [Doc. 109]. Defendant also responded in opposition to the Motion for Attorney['s] Fees and Expenses [Doc. 104], to which Plaintiff replied [Doc. 110]. Plaintiff then filed a Second Supplemental Declaration of Jesse D. Nelson [Doc. 111] requesting additional attorney's fees incurred after June 4, 2018, for hours expended in litigating attorney's fees and other post-trial matters, and Defendant responded [Doc. 112] in opposition. Finally, Plaintiff filed an additional Supplemental Brief in Support of Motion for Attorney Fees and Litigation Expenses [Doc. 115], which the Court will also construe as an appeal of the Clerk's decision on the Bill of Costs. Defendant accordingly responded in opposition. [Doc. 116]. Both motions have been thoroughly briefed, and the Court has considered all of the above filings.

The parties appeared before the Court for a motion hearing on November 7, 2018. Attorney Jesse Nelson appeared on behalf of the Plaintiff. Attorneys Paul Wehmeier and Jay Mader appeared on behalf of the Defendant.

Accordingly, for the reasons more fully explained below, the Court **RECOMMENDS** that the Plaintiff's Motions [**Docs. 95 & 97**] be **GRANTED IN PART AND DENIED IN PART**. Specifically, the Court **RECOMMENDS** that the Plaintiff be awarded a total amount of $212,564.25 in attorney's fees, $3,009.27 in litigation expenses, and $5,261.66 in prejudgment interest.

## I.    BACKGROUND

Plaintiff filed a Complaint against Defendant Parkwest Medical Center ("Parkwest") in this Court on May 29, 2015. [Doc. 1]. The Complaint alleged that Plaintiff began working for the Defendant as a student nurse associate in June 2003, subsequently became a registered nurse, and later, in 2010, she was transferred to an affiliated sister facility, LeConte Medical Center ("LeConte"). [*Id.* at ¶ 7]; *see* [Doc. 23 at 1–2]. The Complaint further stated that in December 2010, while assigned to LeConte, Plaintiff suffered a work-related injury consisting of a multi-level cervical disk herniation and aggravation of a prior back injury. [Doc. 1 at ¶ 8]. Plaintiff was unable to work while she received treatment for her injuries and exhausted her leave under the Family Medical Leave Act ("FMLA"). [Doc. 1 at ¶ 9]. The Complaint alleged that Plaintiff was transferred back to Parkwest in 2012 but was subsequently fired on March 22, 2013 for exhausting all available unpaid medical leave, therefore leaving her eligible for rehire. [*Id.* at ¶ 11].

The Complaint then averred that Plaintiff's doctor released her in October 2013 to work without formal physical restrictions, and Plaintiff subsequently interviewed for a position with Parkwest. [*Id.* at ¶¶ 12–13]. However, Plaintiff alleged that she was told that she was selected for

the position, but then received an email revoking the job offer. [*Id.* at ¶ 13]. Plaintiff stated that she continued to apply for several jobs with Defendant which she was capable of performing. [*Id.* at ¶ 14]. The Complaint continued that Plaintiff hired an attorney by February 2015 to assist her in the workers' compensation process due to her injuries, and that her attorney then notified Defendant of her representation. [*Id.* at ¶ 15]. Plaintiff alleges that Defendant's human resources ("HR") department subsequently offered to restore Plaintiff to her previous position, but Plaintiff requested to clarify with her surgeon if any accommodations were necessary. [*Id.*]. After Plaintiff was unable to attend her doctor's appointment the next day due to inclement weather, she notified the HR representative, who responded that Defendant would not hold the job offer open, and the position was subsequently filled. [*Id.* at ¶ 16]. The Complaint alleged that Plaintiff applied for approximately seventy jobs with Defendant that she was capable of performing, but that she did not receive an interview for any of these positions. [*Id.* at ¶ 17].

The Complaint alleged failure to accommodate and discrimination claims in violation of of the Americans with Disability Act ("ADA") [*Id.* at ¶ 26], retaliation in violation of the FMLA [*Id.* at ¶¶ 29–31], and Tennessee common law retaliation and Tennessee Public Protection Act ("TPPA") claims [*Id.* at ¶ 40]. The Court dismissed the Tennessee state law claims with prejudice through an agreed order [Doc. 16], and Plaintiff voluntarily dismissed her FMLA claim [Doc. 21]. The parties filed cross-motions for summary judgment on Plaintiff's remaining claims under the ADA, [Docs. 22, 24],[1] and the Court granted the Defendant summary judgment on both Plaintiff's discrimination and failure to accommodate claims under the ADA. [Doc. 47]. After Plaintiff filed

---

[1] Plaintiff's claims for retaliation under Tennessee common law and the TPPA were dismissed with prejudice on August 31, 2015 following Defendant's partial motion for judgment on the pleadings and the agreement of both parties. [Docs. 16 and 17].

3

a notice of appeal, the Sixth Circuit reversed the grant of summary judgment to Defendant,[2] and on December 21, 2017, a mandate issued remanding the case for further proceedings. [Doc. 53]. Following a status conference on February 22, 2018, an Order for Mediation [Doc. 55] was entered.

After failing to resolve the case in mediation, the parties proceeded to trial on May 29, 2018, and the trial continued to June 1, 2018, when the jury entered the verdict. The jury determined that the Defendant discriminated against Plaintiff in violation of the ADA. [Doc. 85]. The jury awarded Plaintiff $19,855.43 in back pay and $8,786.50 in lost benefits. [*Id.*]. However, the jury did not find that Plaintiff was entitled to compensatory or punitive damages. [*Id.*]. The Court entered Judgment [Doc. 86] in favor of Plaintiff on June 4, 2018.

## II. POSITIONS OF THE PARTIES

### A. Attorney's Fees and Litigation Expenses

Plaintiff filed a Motion for Award of Attorney['s] Fees and Litigation Expenses [Doc. 97] requesting a lodestar award of $246,891.50 as well as taxable costs and other litigation expenses in the amount of $7,917.21.[3] [Doc. 98]. Plaintiff asserts that she was the prevailing party in her

---

[2] The Sixth Circuit reversed the grant of summary judgment to Defendant on the issue of whether Defendant discriminated against Plaintiff in violation of the ADA when it failed to rehire her, but rejected Plaintiff's discrimination claim based on failure to engage in the interactive process. [Doc. 52].

[3] Plaintiff's Bill of Costs [Doc. 94] included the following claims: fees of the Clerk - $905; fees for service of summons and subpoena - $12.68; fees for printed or electronically recorded transcripts necessarily obtained for use in the case - $2,273.25; fees for printing - $325.78; witness fees - $580; and fees for copies of materials necessarily obtained for use in the case - $747.55, which totaled $4,844.26. All of these fees, with the exception of $12.78 for service of summons and subpoena, are included as part of Plaintiff's instant motion for taxable costs and litigation expenses. However, Plaintiff filed a supplemental brief [Doc. 115] objecting to the Clerk's Findings on the Bill of Costs. Therefore, the Court will address the litigation expenses not detailed in Plaintiff's Bill of Costs, and then review Plaintiff's objections to the Bill of Costs. *See infra* Section III (B) and (C).

ADA claim, which provides for reasonable attorney's fees, litigation expenses, and costs to be awarded to the prevailing party. *See* 42 U.S.C. § 12205.

In support of her motion, Plaintiff identifies three attorneys and two paralegals who worked on the case. The attorneys include Jesse D. Nelson, Kayla L. Towe, and Kayla M. Swiney. For Attorney Nelson, Plaintiff requests an hourly rate of $325. In support of that rate, Plaintiff indicates Attorney Nelson has held a law license since 2006 and has practiced almost exclusively employment law. [Doc. 98-1 at 1–2]. He established his own firm in 2011 and estimates that he has handled well over 200 employment cases, some of which involved dozens of plaintiffs. [*Id.* at 2]. Attorney Nelson serves as a speaker at employment law seminars, training sessions, and CLE programs, and completed a second term as a board member of the Tennessee Employment Lawyers Association. [*Id.* at 2–3]. He expended 611.60 hours in the case prior to the entry of the jury verdict. [*Id.* at 30].

For Attorney Towe, Plaintiff seeks an hourly rate of $250. Attorney Towe has practiced almost exclusively in the area of employment law since becoming barred in 2014. [*Id.* at 4]. She expended 130.70 hours on the case. [*Id.* at 30]. For Attorney Swiney, who served both in a legal and paralegal role at times, Plaintiff requests an hourly rate of $200 for work performed in a legal capacity and $85 per hour for work performed in a paralegal capacity. Attorney Swiney was licensed in 2017. She graduated second in her law school class and served as president of the Mock Trial team and the Executive Symposium Editor of the LMU Law Review. [*Id.* at 4]. She invested 59 hours of legal services and 25.10 hour of paralegal related services in the case. [*Id.* at 30].

For Karla Gander and Ashley James, who performed work as paralegals, Plaintiff is requesting an hourly rate of $85. Ms. Gander holds a bachelor's degree, and she has ten years of

5

experience in the legal administration and human resources. [*Id.* at 4]. Ms. James is a certified paralegal with approximately nine years of experience. [*Id.*]. The number of hours billed for both Ms. Gander and Ms. James totaled 17.8. *See* [*Id.* at 30].

In support of the Motion, Plaintiff states that the hourly rates are reasonable, and she submits Declarations from several attorneys in support of the rates. [Doc. 98 at 4–6]. Plaintiff cites a number of cases, arguing that the rates charged in this matter are reasonable. [*Id.*]. Plaintiff states that she does not seek an enhancement or adjustment of her lodestar amount and that the hourly rates and hours of service are reasonable. Plaintiff states that she was the prevailing party and highlights the award obtained in this case, including the case being remanded after an appeal to the Sixth Circuit. Plaintiff adds that nearly all of the time entries associated with tasks performed on claims she later dismissed have been omitted. [*Id*. at 13].

Plaintiff also notes over a four-year period of representation, beginning with the EEOC investigation through the Sixth Circuit granting Plaintiff's appeal, and then proceeding through trial. [*Id.* at 6]. Plaintiff asserts that the requested fee is reasonable due to Defendant's failure to consider early settlement or make any kind of reasonable settlement offer. [*Id.* at 12]. In addition, Plaintiff contends that her attorneys could not perform work for other clients or accept new clients due to preparing and trying the instant case. Plaintiff avers that the fees are within the range customarily charged by attorneys with similar skill and experience. [*Id.* at 5–6]. Plaintiff asserts that her attorneys are experienced and respected in their fields and that this case was not desirable given the limited economic damages. Plaintiff states that her attorneys have represented her since 2014 and that the awards in other cases support the requested amount. [*Id.*].

For litigation costs, Plaintiff requests $7,917.21, of which $4,831.58[4] was also claimed by Plaintiff as part of her Bill of Costs [Doc. 94].[5] The summary of Plaintiff's litigation costs totaling $3,085.63 includes the following: $2,011.40 in mediation costs; $16.32 for postage; $81.36 for trial/data storage supplies; $184.64 for meals; $225.12 for lodging and meal expenses for travel to Cincinnati for appellate hearing; $198 for parking and $368.79 in mileage.

Defendant objects [Doc. 104] arguing that the hourly rates requested by Plaintiff's attorneys are unreasonable, that fees for unsuccessful claims should be excluded from the lodestar calculation, that a downward departure from the lodestar fee should be applied due to the limited result obtained, and that certain of Plaintiff's expenses for which she seeks reimbursement are unreasonable.

Defendant asserts that the Attorney Nelson's hourly rate should be reduced to $275 and that Attorney Towe's rate should be reduced to $205. Without proposing a specific reduction, Defendant maintains that Attorney Swiney's hourly rate should be "significantly reduced." [Doc. 104 at 10]. Defendant claims that the requested rate for Attorneys Nelson and Towe are unreasonable when compared to recent awards in similar cases and that Attorney Swiney's rate is unreasonable given her years of experience. Defendant also asserts that Plaintiff seeks fees for an unreasonable amount of time related to preparing the EEOC charge as well as Plaintiff's ADA claims. Defendant specifically challenges the 1.7 hours claimed for preparing the EEOC charge,

---

[4] *See supra* note 3.

[5] Plaintiff asserts that, in an abundance of caution, she included certain expenses both in her Bill of Costs, as well as in her Motion for Attorney's Fees. [Doc. 115 at 3]. Under Local Rule 54.1, costs awarded under 28 U.S.C. § 1920 are properly addressed by the Clerk of Court after a Bill of Costs has been properly filed. E.D. Tenn. L.R. 54.1; *see infra* Section III (C). The Court will admonish counsel for Plaintiff that in the future, such costs should be requested only in the submitted Bill of Costs.

7

the 7.4 hours for preparing standard discovery requests, and the 3.3 hours for preparing a reader of a deposition at trial. [*Id.* at 10–11].

Defendant further argues that the fees for unrelated and unsuccessful claims should be excluded, claiming that Plaintiff's FMLA retaliation claims and claims under Tennessee common law and the TPPA are legally and factually distinct from the ADA discrimination claim. [*Id.* at 11–14]. Specifically, Defendant requests that the hours billed for drafting the complaint be reduced from 7.9 hours to 4 hours, and the time billed for reviewing and responding to Defendant's motion for judgment on the pleadings (4.6 hours total) be excluded because Plaintiff was unsuccessful. [*Id.* at 14]. Additionally, Defendant asserts that Plaintiff's requested fees related to her failure to accommodate claim under the ADA are not reasonable, as Plaintiff did not request an accommodation. [*Id.* at 14–16]. Therefore, Defendant requests that 25 hours out of the 98.6 hours billed for preparing Plaintiff's motion for summary judgment and responding to Defendant's motion be excluded and that 40% of the hours billed for Plaintiff's appeal be reduced because the Sixth Circuit rejected Plaintiff's request for summary judgment and remanded the case for trial on the single claim of discrimination under the ADA.

Lastly, Defendant asserts that Plaintiff's lodestar fee should be reduced by 35% due to the limited result obtained. Defendant argues that the relevant settlement negotiations as well as the fact that the jury did not award compensatory or punitive damages constitute limited success. [*Id.* at 16]. Further, Defendant claims that this reduction follows precedent set by this Court in *Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*, No. 3:14-cv-397, wherein the Court reduced the lodestar amount after a plaintiff asserting discrimination claims obtained a limited result of only back pay. [*Id.* at 18]. Defendant also claims that Plaintiff seeks reimbursement for unreasonable expenses, including mediation fees and meals during depositions. [*Id.* at 19].

8

Plaintiff filed a Reply [Doc. 110] objecting to the requested reduction of the lodestar amount, asserting that the Defendant improperly equates success with the amount of the verdict. Plaintiff maintains that she achieved complete success because the jury awarded the full measure of economic damages and that the lodestar amount should be reduced only in rare and exceptional cases. [*Id.* at 2, 15]. With regard to attorney's fees, Plaintiff claims that the Defendant has not countered her evidence of the prevailing market rate and failed to challenge the declarations of the five attorneys who testified as to the reasonableness of the fees. [*Id.* at 10–13]. Further, Plaintiff contends that her attorneys should be compensated for all hours billed and challenges Defendant's argued reduction of fees for her state law and FMLA claims. Plaintiff asserts that she succeeded on the only claim she took to trial and that all claims were based upon a common nucleus of facts. [*Id.* at 3–5]. Finally, Plaintiff argues that Defendant misrepresented past settlement negations, asserting that Defendant continually refused to engage in settlement negations, only to offer a $145,000 settlement during trial. [*Id.* at 6–7].

Plaintiff then filed a Supplemental Declaration [Doc. 111] detailing additional attorney's fees for services rendered from June 4, 2018 through August 29, 2018. Overall, Plaintiff states that an additional 75.7 hours of work were performed, for an additional $24,602.50 in attorney's fees. Defendant filed a Response [Doc. 112], claiming that the requested hourly rate and number of hours are unreasonable. Defendant asserts that Plaintiff's rate for this time period should be modified to $275 per hour and that the requested number of hours should be reduced by 50%.

### B. Prejudgment Interest

Plaintiff requests [Doc. 95] $6,172.52 in prejudgment interest for the operative time period of February 21, 2014 through June 4, 2018. Plaintiff claims that the requested 5% prejudgment interest rate, compounded annually, is reasonable due to the case-specific factors that the Court

9

must consider when determining the rate of prejudgment interest. Ultimately, Plaintiff asserts that the requested rate is necessary to fulfill the remedial goal of the ADA and prohibit Defendant from benefitting from its wrongdoing. Plaintiff also points to this District's recent holding in *Bristol Anesthesia Servs. v. Carilion Clinic Medicare Res.*, No. 2:15-cv-17, 2018 WL 2976289 (E.D. Tenn. June 13, 2018), where the Court held that a 5% prejudgment interest rate is fair to compensate the plaintiff "for the loss of use of the amount wrongfully withheld" by the defendant over a four-year period. *Id.* at *4.

Defendant responded in opposition [Doc. 103] to Plaintiff's Motion for Prejudgment Interest. While acknowledging that the Court has discretion to award prejudgment interest [*Id.* at 3], Defendant asserts that Plaintiff's motion should be dismissed because Plaintiff failed to present evidence regarding any alleged windfall to Defendant arising from a failure to pay her wages and benefits. [*Id.* at 7]. Further, Defendant maintains that Plaintiff's requested 5% interest rate "unjustly enriches her by more than doubling the CPI and the earned interest necessary to make her whole." [*Id.* at 6]. Defendant argues that Plaintiff failed to present any evidence that she would have or could have earned 5% interest on the award and that an interest rate of 2.27% compounded annually for 4.3 years, for a total amount of $2,690.59,[6] would make Plaintiff whole. [*Id.* at 5–6]. Defendant bases this rate on the postjudgment interest statutory framework set forth in 28 U.S.C. § 1961. While Defendant acknowledges that the Court may not mechanically apply the postjudgment interest rate, Defendant argues that after a consideration of all case-specific factors, this rate provides Plaintiff with the same purchasing power as if she received the entire amount in February 2014. [*Id.*].

---

[6] Defendant asserts that $2,690.59 exceeds the $2,050.36 necessary to maintain the purchasing power of Plaintiff's award by $640.23 ($2,690.5[9] minus $2,050.36). [*Id.* at 2].

Plaintiff filed a Reply to Defendant's Response [Doc. 109], claiming that Defendant's arguments regarding various rates incorrectly attempt to require her to show proof as to how she would have invested the amount received. Plaintiff further urges that the application of an interest rate lower than inflation would be wholly insufficient. [*Id*. at 4].

## III. ANALYSIS

A court may award reasonable attorney fees, litigation expenses, and costs to the prevailing party in a discrimination action under ADA:

> In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.

42 U.S.C. § 12205; *see also Hamlin v. Charter Twp. of Flint,* 165 F.3d 426, 437 (6th Cir. 1999). Whether fees are awarded is a matter within the Court's discretion. *See* 42 U.S.C. § 12205.

Similarly, prejudgment interest awards are within the trial court's discretion. *EEOC v. Wooster Brush Co. Employees Relief Ass'n,* 727 F.2d 566, 579 (6th Cir. 1984). Such awards represent restitution for losing the use of money from the time of injury to the vindication of the right in a court of law. Prejudgment interest is usually appropriate to help make victims of discrimination whole. *See EEOC v. Wilson Metal Casket Co.,* 24 F.3d 836, 842 (6th Cir. 1994).

The Court will analyze each of Plaintiff's claims, in turn.

### A. Attorney's Fees

As the prevailing party, Plaintiff requests that she be awarded attorney fees as contemplated by the ADA. The determination for this Court is whether the requested amount of attorney's fees is reasonable. In making this determination, courts start with the "lodestar method," which is "the proven number of hours reasonably expended on the case by the attorney, multiplied by a

11

reasonable hourly rate." *Jordan v. City of Cleveland,* 464 F.3d 584, 602 (6th Cir. 2006); *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005). "To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). The party seeking an award of fees bears the burden of submitting sufficient evidence supporting the hours worked and rates claimed. *Gonter v. Hunt Valve Co., Inc.,* 510 F.3d 610, 617 (6th Cir. 2007).

The reasonableness of the hours and the rate is determined by considering twelve factors:

> (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in "similar cases."

*Isabel* at 415–16. "'[T]he most critical factor' in determining the reasonableness of a fee award 'is degree of success obtained.'" *Farrar v. Hobby,* 506 U.S. 103, 114 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). Where a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee; if a plaintiff obtains "limited success, the district court should award only that amount of fees that is reasonable in relation to the success obtained." *Isabel*, 404 F.3d at 416 (quoting *Hensley,* 461 U.S. at 435). It is noted, however, that the Sixth Circuit Court of Appeals has "repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed." *Deja Vu v. Metro. Gov't of Nashville & Davidson County, Tenn.,* 421 F.3d 417, 423 (6th Cir. 2005). Rather, the Sixth Circuit has stated that:

> [A] court should not reduce attorney fees based on a simple ratio of successful claims to claims raised. When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced.

*Id*. (quoting *Thurman v. Yellow Freight Sys., Inc.,* 90 F.3d 1160, 1169 (6th Cir. 1996) (citation omitted)).

With the above analysis in mind, the Court will turn to Plaintiff's request for attorney's fees in the instant matter and the Defendant's objections thereto.

The following is a summary of Plaintiff's request for fees:

| Attorney/Paralegal | Rate Requested | Hours Incurred through 6/1/18 | Hours Incurred after 6/4/18 | Total Fee |
|---|---|---|---|---|
| Jesse D. Nelson (Attorney) | $325 | 611.60 | 75.7 | $223,372.50 |
| Kayla L. Towe (Attorney) | $250 | 130.70 | | $32,675.00 |
| Kayla M. Swiney (Served in attorney and paralegal role) | $200 – attorney $85 – paralegal | 59 25.10 | | $11,800.00 $2,133.50 |
| Karla Gander and Ashley James (Paralegals) | $85 | 17.8 | | $1,513.00 |
| | | **844.20** | **75.7** | **$271,494.00** |

[*See* Docs. 98-1 at 30 and 111-1 at 4].

### 1. Hourly Rates

As an initial matter, Defendant does not challenge the paralegal hourly rate of $85, and the Court finds that rate to be reasonable.[7]  Defendant argues, however, that the hourly rates requested

---

[7] Paralegal fees are compensable under fee shifting statutes at the rates at which their services are billed to clients.  *See Missouri v. Jenkins,* 491 U.S. 274, 287–89 (1980) (citations omitted).

for Attorneys Nelson, Towe, and Swiney are unreasonable. Defendant requests that Attorney Nelson's requested hourly rate of $325 be reduced to $275, Attorney Towe's hourly rate of $250 be reduced to $205, and that Attorney Swiney's hourly rate of $200[8] be "significantly reduced." [Doc. 104 p. 10].

In determining the appropriate hourly rate to apply, the district court must consider the prevailing market rate in the relevant community, which for fee purposes, is the legal community within the court's territorial jurisdiction or venue. *Brooks v. Invista*, No. 1:05-cv-328, 2008 WL 304893, at *3 (E.D. Tenn. Jan. 30, 2008) (citing *Adcock-Ladd v. Sec'y of the Treasury*, 227 F.3d 343, 349 (6th Cir. 2000)). It should be at a rate "necessary to cause competent legal counsel to perform the work required." *EEOC v. Dolgencorp, LLC,* 277 F. Supp. 3d 932, 966 (E.D. Tenn. 2017). The appropriate or reasonable hourly rate "may not, however, exceed the amount necessary to cause competent legal counsel to perform the work required." *Id.* (citing *Coulter v. Tennessee*, 805 F.2d 146, 148 (6th Cir. 1986), *abrogated on other grounds by*, *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686 (6th Cir. 2016)); *see also Lamar Adver. Co. v. Charter Township of Van Buren*, 178 F. App'x 498 (6th Cir. 2006) ("Even if it would be reasonable to award [plaintiff] $370 per hour, the record supports the district court's conclusion that $200 per hour is sufficient to encourage competent lawyers in the relevant community to undertake legal representation.").

### a. Attorney Nelson

Defendant challenges Attorney Nelson's requested hourly rate of $325 per hour. Attorney Nelson, whom the Court acknowledges served as lead counsel on this matter, has been practicing

---

[8] Defendant does not appear to challenge the hourly rate of $85 for Swiney's hours billed at the paralegal rate, but challenges the hourly rate and number of hours claimed by Swiney in her attorney role, *infra* at Section III(A)(1)(c) and Section III(A)(2)(a).

14

for approximately 12 years. His firm represented Plaintiff throughout the EEOC investigation and the entirety of this case. Attorney Nelson declares that hourly rate of $325 is appropriate under the prevailing local market rate, as well as a review of similar awards awarded by courts within this District. Further, Attorney Nelson argues that the requested rate is reasonable due to the fact that his representation of Plaintiff was based on a contingency fee agreement, the extensive nature of his representation, and Plaintiff's willingness throughout this matter to engage in settlement negotiations.

In further support of the request for a rate of $325, Plaintiff submitted Declarations from several attorneys. *See* [Doc. 98-2] (Declaration of Jennifer Morton, who has approximately 26 years of employment law experience, stating her hourly rate is $350-$400); [Doc. 98-3] (Declaration of Doug S. Hamill, who has approximately 15 years of experience and practices in the Chattanooga area, stating that $325 is a reasonable rate for an attorney with Attorney Nelson's qualifications in the area of employee rights litigation); [Doc. 98-4] (Declaration of Jeffrey C. Taylor, who has 30 years of experience and handles both plaintiff and defense employment cases, stating that $325 is a reasonable rate for someone of Attorney Nelson's qualifications, experience, and reputation in Knoxville); [Doc. 98-5] (Declaration of Arthur F. Knight, III, who has 25 years of experience in civil rights and employment litigation, attesting to the reasonableness of the $325 hourly rate); and [Doc. 98-6] (Declaration of Katherine Young, whose 23 years of experience has included 80% employment law practice, stating that her current rate is $350 per hour when representing a plaintiff in a contingency case.).

Defendant asserts that Plaintiff's requested hourly rate of $325 for Attorney Nelson is unreasonable, as the requested rate is not commensurate with his years of experience and represents an unreasonable adjustment from this Court's recent decision in *Pittington v. Great*

*Smoky Mountain Lumberjack Feud*, LLC, No. 3:13-cv-397, 2017 WL 9251309 (E.D. Tenn. Aug. 7, 2017), *report and recommendation adopted by*, 2017 WL 4270754 (E.D. Tenn. Sept. 26, 2017). First, Defendant claims that Plaintiff's requested hourly rate places him among the top scale of more experienced employment attorneys in the local market, such as Jennifer Morton, who was recently awarded $350 per hour as the lead attorney in an ADA discrimination case in *EEOC v. Dolgencorp, LLC,* 277 F. Supp. 3d 932, 966 (E.D. Tenn. 2017), *aff'd*, 899 F.3d 428 (6th Cir. 2018). Therefore, Defendant asserts that Attorney Nelson's hourly rate should be reduced to $275—the same hourly rate that he was awarded in *Pittington*.

The Court has considered the parties' arguments with respect to Attorney Nelson's rate and recommends that his hourly rate be reduced to $290. A district court may look to "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Van Horn v. Nationwide Pro. & Cas. Ins.*, 436 F. App'x 496, 499 (6th Cir. 2011). In this case, the Court notes that Attorney Morton, who stated in her Declaration that her charged hourly rate is between $350 and $400, and was recently awarded $350 per hour in *Dolgencorp*, 277 F. Supp. 3d at 966, is a distinguished attorney within this District, with 26 years of pertinent experience. Additionally, Attorney Young, with 23 years of employment law experience, stated in her Declaration that she charges $350 per hour in contingency cases. [Doc. 98-6].

In contrast, in his recommendation to Chief District Judge Varlan in *Dolgencorp*, Magistrate Judge Guyton noted the Declaration of Attorney Melissa Carrasco, who with seven years of experience at the time, charged $275 per hour in contingency employment cases. *See EEOC v. Dolgencorp*, No. 3:15-CV-441, 2017 WL 9517513, at *6 (E.D. Tenn. Aug. 7, 2017), *report and recommendation adopted by*, 277 F. Supp. 3d 932 (E.D. Tenn. 2017). Similarly, in

16

*Dolgencorp*, Magistrate Judge Guyton also noted the Declaration of Attorney Wade Davies, "stating that a billable hourly rate of $250-$350 is within a reasonable range in the Knoxville, Tennessee market for attorneys with approximately 10 years of experience who are accomplished in their primary area of practice." *Id.*

However, the Court also finds that the circumstances in this case, coupled with Attorney Nelson's experience and skill in this field, warrant an increase from this Court's recent award in *Pittington*. Attorney Nelson contends that *Pittington* was tried more than two years prior to the present case—thus, his level of experience has improved, and ultimately, his market rate has increased. [Doc. 110 at 9]. Further, during the hearing, Attorney Nelson stated that the Defendants in *Pittington* did not challenge the requested back pay or economic damages calculation. Additionally, Attorney Nelson was able to obtain an appellate reversal of summary judgment in the present case, as well as a jury verdict for all requested economic damages on the claims before the jury.

Accordingly, after consideration of the record, the Court recommends that the District Judge set the hourly rate for Attorney Nelson at $290. There is no question before the Court that Attorney Nelson is experienced in this practice area, and the submitted declarations and result obtained support his skill and reputation in the legal community. Therefore, the Court recommends that this hourly rate is consistent with his twelve years of experience and reflects the prevailing market rate. *See Adcock-Ladd v. Sec'y of the Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (noting that the prevailing market rate is the rate that "lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record").

### b. Attorney Towe

Defendant also challenges Plaintiff's requested hourly rate of $250 per hour for Attorney Towe, as Defendant submits that Attorney Towe's hourly rate should be reduced to $205. Defendant claims that due to Attorney Towe's limited participation in depositions and the trial in this case, Plaintiff failed to demonstrate why Attorney Towe's rate should be increased over the $205 per hour that she was recently awarded in *Pittington*.

The Court has also reviewed the Declaration of Attorney Nelson regarding Attorney Towe. [Doc. 98-1]. Attorney Towe received her license to practice law in 2014, and previously worked as a law clerk for Judge Vescovo in the Western District of Tennessee. [*Id.* at ¶ 22]. In further support of the requested rate of $250, Plaintiff submitted Declarations from several attorneys stating that $250 per hour is a reasonable rate for an associate attorney who has actively participated in a jury trial and focuses in employee rights litigation. *See* [Doc. 98-2] (Declaration of Jennifer Morton); [Doc. 98-3] (Declaration of Doug S. Hamill); [Doc. 98-4] (Declaration of Jeffrey C. Taylor); [Doc. 98-5] (Declaration of Arthur F. Knight, III); and [Doc. 98-6] (Declaration of Katherine Young).

Ultimately, the Court will recommend that Attorney Towe's hourly rate be reduced to $210. While Plaintiff's submitted Declarations state that $250 per hour is a reasonable rate for an associate attorney, Plaintiff failed to provide a rate comparison for associate attorneys with her equivalent level of experience. In *Dolgencorp*, Magistrate Judge Guyton recommended that $250 per hour was a reasonable hourly rate for an attorney who did not serve as lead counsel and had been practicing for ten years. *See Dolgencorp*, 2017 WL 9517513, at *6 (E.D. Tenn. Aug. 7, 2017), *report and recommendation adopted by*, 277 F. Supp. 3d 932 (E.D. Tenn. 2017).

While Plaintiff argues that Attorney Towe's hourly rate should not vary "based on the amount of work she did" [Doc. 110 p. 12], the Court finds that the hourly rate of $210 reflects the value that Attorney Towe brought to this case, while also indicating her level of experience and that she was not lead counsel. The submitted time sheets indicate that Attorney Towe assisted in all phases of the litigation including, conducting research, assisting with discovery and appellate matters, drafting motions, pretrial activities, and participating in trial. [Doc. 98-1 at 14, 19-29]. Defendant attempts to discount Attorney Towe's contributions claiming that she "did not present testimony at trial or argue motions (before or during trial);" [Doc. 104 at 8] however, the Court evaluates the full scope of her contributions and her level of experience in determining an appropriate rate. In *Pittington*, this Court found that Attorney Towe's hourly rate of $205 "reflects her contribution to [the] case, such as drafting several motions and participating at the trial." *Pittington v. Great Smoky Mountain Lumberjack Feud*, LLC, No. 3:13-cv-397, 2017 WL 9251309, at *5 (E.D. Tenn. Aug. 7, 2017), *report and recommendation adopted by*, 2017 WL 4270754 (E.D. Tenn. Sept. 26, 2017). Here, the increase from the recent award in *Pittington* is commensurate with Attorney Towe's additional experience in the practice area and reflects her scope of responsibilities in this case.

After consideration of the record, the Court recommends that the hourly rate for Attorney Towe be set at $210. This rate is such that "lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Adcock-Ladd*, 227 F.3d at 350.

### c. Attorney Swiney

Lastly, Defendant challenges the requested hourly rate of $200 for the work which Attorney Swiney performed in an attorney capacity. In support of the requested rate, Plaintiff

submitted Declarations from several attorneys stating that $200 per hour is reasonable for a new attorney who performs substantive work in employment cases. *See* [Doc. 98-2] (Declaration of Jennifer Morton); [Doc. 98-3] (Declaration of Doug S. Hamill); [Doc. 98-4] (Declaration of Jeffrey C. Taylor); [Doc. 98-5] (Declaration of Arthur F. Knight, III); and [Doc. 98-6] (Declaration of Katherine Young). Additionally, the Court notes that Attorney Swiney currently works as an associate attorney with the Nelson Law Group, PLLC, and was licensed in 2017 after graduating second in her class at the LMU Duncan School of Law. [Doc. 98-1 p. 4].

The Court will recommend that Attorney Swiney's hourly rate for work performed in an attorney capacity be reduced to $175 per hour to reflect her experience level and participation in the case. In *Herring v. SCI Tennessee Funeral Services, LLC*, Magistrate Judge Corker recently recommended that an hourly rate of $175 constitutes "a reasonable hourly rate for an attorney with no experience" in light of the "pleadings and the Court's understanding of prevailing rates in the legal community." No. 2:15-CV-280, 2018 WL 2406008, at *8 (E.D. Tenn. May 4, 2018), *report and recommendation adopted by*, 2018 WL 2407192 (E.D. Tenn. May 24, 2018). In *Herring*, a complaint alleging Title VII discrimination was filed on August 25, 2015, and the associate attorney at issue was licensed in 2015 and "began working on [the] case in August 2015." *Id.* at *1 and *8.

While Defendant argues that Plaintiff "overstaffed the case and now seeks reimbursement for training a new associate" [Doc. 104 at 9], Defendant notably does not argue that there was any duplication of work. Attorney Swiney's billing entries include legal research and trial preparation activities, but Defendant fails to specify what specific entries could have been handled by a paralegal, other than the preparation of a reader for Dr. Johnson's testimony. Further, work

20

performed by Attorney Nelson or Attorney Towe, instead of Attorney Swiney, would have resulted in a higher hourly rate charged.

Ultimately, the Court recommends that the District Judge approve an hourly rate of $175 for the work performed by Attorney Swiney in an attorney capacity, as it accurately reflects her experience level.

### 2.    Hours Expended

Defendant asserts that the overall hours requested are excessive and must be reduced. First, Defendant challenges purported unreasonable requested hours in preparing Plaintiff's EEOC charge and ADA claims. [Doc. 104 at 10–11]. Next, Defendant claims that the time spent on Plaintiff's unsuccessful and unrelated claims should be excluded from the lodestar amount. [*Id.* at 11–16]. Third, Defendant contends that the lodestar amount should be reduced because of Plaintiff's "limited success" at trial. [*Id.* at 16–19]. Finally, Defendant states that Plaintiff's request for "fees for fees" is excessive and unreasonable. [Doc. 112 at 2–5].

### a.   EEOC and ADA claims

Defendant challenges specific billing entries related to time expended in preparing Plaintiff's EEOC charge, Plaintiff's discovery requests, and trial preparation. First, Defendant asserts that the requested 1.7 hours for preparing the EEOC charge, which allegedly contained incorrect information, should be reduced to one hour. [Doc. 104 at 10]. However, Plaintiff correctly asserts that Attorney Nelson spent 1.1 hours drafting the EEOC charge, and the remaining 0.6 hours was a telephone conference with Plaintiff. [Doc. 110 at 13]; *see* [Doc. 98-1 at 12].

Pursuant to 42 U.S.C. § 12205, "In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, . . . a reasonable attorney's fee . . . ." The Supreme Court has explained that a court may award

attorney's fees for time "spent on administrative proceedings to enforce the civil rights claim prior to the litigation." *North Carolina Dept. of Transp. v. Crest Street Cmty. Council, Inc.*, 479 U.S. 6, 15 (1986). "Courts have held that time spent on an EEOC complaint and related preparation is recoverable." *Marshall v. Rawlings Co., LLC*, No. 3:14-CV-359, 2018 WL 3028574, at *7 (W.D. Ky. June 18, 2018) (internal citation omitted).

Plaintiff was "required to exhaust the EEOC process before filing suit and such tasks include counsel pursuing the EEOC charge . . . ." *EEOC v. Dolgencorp*, No. 3:15-CV-441, 2017 WL 9517513, at *6 (E.D. Tenn. Aug. 7, 2017), *report and recommendation adopted by*, 277 F. Supp. 3d 932 (E.D. Tenn. 2017). The Court has reviewed the itemized statements [Doc. 98-1 at 11–30] submitted with Plaintiff's Motion and finds such tasks are reflected in the statements. Accordingly, the Court will not recommend any reductions for time spent preparing the EEOC charge.

Next, Defendant argues that the 7.4 hours charged for preparing Plaintiff's discovery requests, consisting of "15 standard interrogatories and 23 standard requests for production," should be reduced to 5.4 hours. [Doc. 104 at 10–11]. First, Defendant does not describe which specific billing entries are challenged to equal the asserted unreasonable 7.4 hours spent on preparing discovery requests. Additionally, the Court notes that Defendant fails to explain why 5.4 hours constitute a more reasonable time period for preparing discovery requests, or how Plaintiff's charged 7.4 hours is unreasonable. Therefore, the Court finds that the charged amount does amount to excessive time spent, and will not recommend a reduction for the time expended preparing Plaintiff's discovery requests.

Lastly, Defendant asserts that Attorney Swiney's billed entries totaling 3.3 hours for time spent analyzing Dr. Paul Johnson's deposition and preparing John Haines to read Dr. Johnson's

deposition at trial should be deducted as such work "could have been handled entirely by support staff, or a short conference with counsel of record in this case." [*Id.* at 11]. First, the Court notes that it has recommended that Attorney Swiney's hourly rate for work performed in an attorney capacity be reduced to $175 per hour. Additionally, Plaintiff states that Attorney Swiney was responsible for analyzing Dr. Johnson's deposition to determine what objections would be made, reviewing the transcript to potentially edit for efficiency, as well as finding an individual familiar with medical technology to read the deposition. [Doc. 110 at 14]. Therefore, the Court will not recommend that Attorney Swiney's billing entries regarding the preparation of a deposition reader for trial be reduced.

### b. Unsuccessful Claims

Defendant asserts that the time spent on Plaintiff's unsuccessful claims, including her FMLA retaliation claim and two state law claims, is not recoverable and should be excluded from the lodestar amount. [Doc. 104 at 11–16]. Defendant contends that Plaintiff's FMLA retaliation claim and the state law retaliation and TPPA claims are legally and factually distinct from her successful ADA discrimination claim. Therefore, Defendant argues that the hours attributed to drafting Plaintiff's complaint should be reduced to 4.0 hours, and the 4.6 hours billed for reviewing and responding to Defendant's motion for judgment on the pleadings should be excluded because Plaintiff was unsuccessful.

Additionally, Defendant asserts that 25 hours of the requested 98.6 hours Plaintiff billed for pursuing Plaintiff's failure to accommodate claim under the ADA, including Plaintiff's motion for summary judgment and an appeal to the Sixth Circuit, should be reduced. [Doc. 104 at 15–16]. However, Defendant also claims that the remaining time spent on Plaintiff's unsuccessful summary judgment claim should be cut from the lodestar. Further, Defendant submits that 40%

of the 165.5 hours Plaintiff submitted related to her appeal of the denial of summary judgment to the Sixth Circuit should be reduced, for a total reduction of 66.2 hours. [*Id.*].

Plaintiff replies that the retaliation and ADA failure to accommodate claims arose from the same common core of facts, and were based on a legal theory related to her successful disability discrimination claims. [Doc. 110 at 3–5]. Plaintiff claims that "[t]he entirety of this litigation has centered on why [Defendant] rejected [Plaintiff's] efforts to return to work after the workers' compensation injury that required her to undergo surgery and exhaust FMLA leave." [*Id.* at 4]. Plaintiff further contends that Defendant improperly requests the Court to reduce overall time expended on certain portions of motions, rather than identifying specific billing entries.

The Sixth Circuit recently provided guidance on whether courts may award attorney's fees on unsuccessful claims. Specifically, the Sixth Circuit stated, "[a] civil-rights plaintiff need not succeed on every claim to recover attorney's fees; success on a single claim is sufficient to become a prevailing party." *Green Party of Tennessee v. Hargett*, 767 F.3d 533, 552 (6th Cir. 2014) (citing *McQueary v. Conway,* 614 F.3d 591, 603 (6th Cir. 2010)). The Sixth Circuit further explained that when the unmeritorious claims are based on different facts and legal theories than the meritorious claims, the court must treat them separately and not award fees for the unmeritorious claims. *Id.* (quotations omitted). The Court in *Hargett* continued:

> In contrast, if a plaintiff's unmeritorious and meritorious claims arise out of a common core of facts, and involve related legal theories, a court should not exempt from its fee award the hours spent on the claims that did not succeed. To determine if two claims are related, a court considers whether relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from that which gave rise to the plaintiff's successful claim.

*Id.*; *see, e.g.*, *Jordan v. City of Cleveland*, 464 F.3d 584, 603 (6th Cir. 2006) ("[T]he seminal opinion in *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983), explained that when claims 'involve a

24

common core of facts' or are 'based on related legal theories,' the district court's rejection of certain grounds is not a sufficient reason for reducing a fee.").

The Court has reviewed Defendant's objections and ultimately will not recommend that the hours expended litigating the retaliation and failure to accommodate claims be reduced. First, with respect to Plaintiff's state law and TPPA claims, along with Plaintiff's FMLA retaliation claims, the Court finds that these claims "are based on a common core of facts" and were related to Plaintiff's successful ADA discrimination claim. *See Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 554–55 (6th Cir. 2008) (upholding a district court's award of fees as "discrimination and retaliation claims are related for the purpose of awarding attorney fees" and "[c]ommon facts are at the heart of all of [Plaintiff's] claims, both successful and unsuccessful").

As Plaintiff emphasized, the theory of her retaliation claims was that Defendant refused to rehire Plaintiff after her injury and surgery, which resulted in her exhausting her FMLA leave while also being eligible for rehire. Accordingly, these claims are related, as they each centered on Plaintiff's initial injury, exhaustion of her FMLA leave, and the Defendant's decision to not rehire Plaintiff. *See, e.g.*, *Michon v. Western Express, Inc.*, No. 3:13-cv-189, 2015 WL 13740758, at *3 (M.D. Tenn. June 22, 2015) ("Michon's unsuccessful Tennessee common law retaliation claim was based on an identical set of facts, and a nearly identical legal theory, as her Title VII and THRA claims."); *Rodriguez ex rel. Fogel v. City of Chicago*, No. 08-C-4710, 2013 WL 5348307, at *9 (N.D. Ill. Sept. 24, 2013) ("Reducing the award by a third premised on the dismissal of the ADA claim is not warranted considering those facts substantiated Rodriguez's theory of relief under her FMLA claims.").

The Court also will not recommend that Plaintiff's requested hours expended relating to her failure to accommodate claim under the ADA be reduced. Defendant asserts that this claim

was unreasonable as Plaintiff did not request an accommodation, and the Sixth Circuit remanded the case for trial on the single claim of discrimination under the ADA.

Here, the ADA discrimination and failure to accommodate claims are also based on a common core of facts. Plaintiff claimed that Defendant failed to accommodate her disability by considering her for other positions and holding open the offer to return to her previous position while she consulted with her doctor. Therefore, both claims involve Defendant's offer to restore Plaintiff to her previous position, the subsequent revocation of that offer, and Defendant's refusal to interview Plaintiff for any additional position for which she applied. In addition, the two claims are based on related legal theories, as "the ADA imposes upon employers the duty to make reasonable accommodations for known disabilities, and requires the same *prima facie* elements as ADA discrimination." *See Harper v. Rutherford Cty.,* No. 3:17-cv-245, at \*5 n.5 (M.D. Tenn. Sept. 14, 2018) (citing *EEOC v. Dolgencorp, LLC*, 196 F. Supp. 3d 783, 802 (E.D. Tenn. 2016)).

Although Defendant requests a percentage of the total time requested for briefing Plaintiff's motion for summary judgment and opposing Defendant's motion for summary judgment, in addition to hours requested associated with the appeal to the Sixth Circuit, be reduced, "[t]he question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief requested." *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1173 (6th Cir. 1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001). Rather, the standard is whether "a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Id.*, *cited with approval in The Ne. Ohio Coal. for the Homeless v. Husted,* 831 F.3d 686, 708 (6th Cir. 2016). The Court finds that Plaintiff's ADA claims are intertwined, and the

26

hours billed with respect to Plaintiff's failure to accommodate claims were reasonably expended at the time of billing. Therefore, the Court will not recommend that time spent on Plaintiff's unsuccessful claims be reduced.

### c. Limited Success

Defendant argues that Plaintiff's "lodestar" fee should be adjusted downward because of her "limited success." [Doc. 104 at 16]. Defendant contends that the relevant settlement negotiations, coupled with the fact that Plaintiff did not receive compensatory or punitive damages, constitutes a lack of success, and that the Court should reduce the final lodestar amount by 35%. However, Plaintiff asserts that her case does not constitute one of the rare cases in which the Court should deviate from the lodestar amount. [Doc. 110 p. 16].

There is a strong presumption that the amount of fees determined by the lodestar method is reasonable. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995). Further, "a reduction in attorney fees [awarded to a prevailing plaintiff] is to be applied only in rare and exceptional cases where specific evidence in the record requires it." *Isabel v. City of Memphis*, 404 F.3d 404, 416 (6th Cir. 2005).

However, as the Court has previously stated, "[a]n award based on the total number of hours reasonably expended on the litigation might . . . result in an excessive amount if the claimant has achieved only partial success." *Imwalle v. Reliance Med. Prods. Inc.*, 515 F.3d 531, 552 (6th Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). "Thus, it is well-established that, after determining the basic lodestar, district courts may consider the prevailing party's degree of success in determining the reasonableness of a fee award." *Snide v. Discount Drug Mart, Inc.*, No. 1:11-CV-244, 2013 WL 6145130, at *9 (N.D. Ohio Nov. 21, 2013) (citing *Hensley*, 461 U.S.

27

at 434 (stating that, after determining the lodestar, "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained'"); *see also Kentucky Rest. Concepts, Inc. v. City of Louisville*, 117 F. App'x 415, 420 (6th Cir. 2004)).

Where the purpose of the litigation is to recover damages, then the district court must consider the amount and nature of damages awarded when determining attorney fees. *Farrar v. Hobby*, 506 U.S. 103, 114–15 (1992) (citing *Hensley*, 461 U.S. at 436). "[D]istrict courts should exercise their equitable discretion in such cases [where plaintiffs have had only partial success] to arrive at a reasonable fee award, either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789–90 (1989); *see also Hensley*, 461 U.S. at 436–37. However, "[i]n the civil rights area there is no requirement that the amount of an award of attorney's fees be proportional to the amount of the underlying damages." *Grandview Raceway*, 46 F.3d at 1401 (citing *City of Riverside v. Rivera*, 477 U.S. 561 (1986) (upholding an award of attorney fees pursuant to 42 U.S.C. § 1988 for $245,456.25 where the underlying damages award was $33,350)).

Here, Plaintiff's state law claims were dismissed through an agreed order, and Plaintiff voluntarily dismissed her FMLA retaliation claim. The Sixth Circuit reversed the grant of summary judgment on Plaintiff's ADA discrimination claim, but rejected Plaintiff's claim regarding Defendant's failure to engage in the interactive process. The jury subsequently found that Defendant discriminated against Plaintiff in violation of the ADA and awarded Plaintiff $19,855.43 in back pay and $8,786.50 in lost benefits, while declining to award Plaintiff compensatory or punitive damages. Defendant admits that the jury awarded Plaintiff "all [of] the

back pay and lost benefits requested," but argues that Plaintiff achieved limited success because the jury did not award compensatory or punitive damages, and that Plaintiff "had sought more than $280,000 in compensatory damages." [Doc. 104 at 18].

Ultimately, "[t]here is no precise rule or formula for making these determinations" regarding the "degree of success" and potential reductions. *Hensley*, 461 U.S. at 436. "When an adjustment is requested on the basis of . . . [the] limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Id.* at 437; *see also Hines v. City of Columbus, Ohio*, 676 F. App'x. 546, 556 (6th Cir. 2017) ("Indeed, a trial court abuses its discretion when it does not consider the relationship between the fee awarded and the success obtained.").

In this case, the Court notes that Plaintiff achieved success in that she received the full measure of back pay and lost benefits requested as well as a favorable verdict on the only claim before the jury. Plaintiff emphasizes this fact to differentiate the present case from the 35% reduction for limited success in *Pittington*, stating that in *Pittington* the jury awarded only 25% of the requested back pay. [Doc. 110 at 15]; *see Pittington v. Great Smoky Mountain Lumberjack Feud*, LLC, No. 3:13-cv-397, 2017 WL 9251309 (E.D. Tenn. Aug. 7, 2017), *report and recommendation adopted by*, 2017 WL 4270754 (E.D. Tenn. Sept. 26, 2017). Further, Plaintiff succeeded on her appeal to the Sixth Circuit as the Court reversed the grant of summary judgment on Plaintiff's ADA discrimination claim based on Defendant's failure to rehire her.

In addition, although Defendant claims that the Court should find that Plaintiff's refusal to settle the case resulted in the unnecessary expenditure of time, the Court notes that Plaintiff attempted to enter into meaningful settlement negotiations. *See id.* (noting "[c]onsidering a rejected settlement offer is one way of measuring the degree of success") (internal citations

29

omitted); *see, e.g.*, *McKelvey v. Sec'y of U.S. Army*, 768 F.3d 491, 495 (6th Cir. 2014) ("Few, if any, reasonable litigants would call a monetary judgment that comes in well under the money offered to settle the case a success."). Plaintiff stated that Defendant notified her that it was not interested in settlement prior to depositions and while dispositive motions were pending. [Doc. 110 at 6]. Although Defendant claims that it offered to negotiate in a range from $25,000 to $75,000, and that it accepted the mediator's proposed bracket of $50,000 to $100,000 when the Court ordered mediation after the remand from the Sixth Circuit [Doc. 104 at 17], Plaintiff claims that Defendant's final offer was $12,000 including attorney's fees. [Doc. 110 at 6]. Additionally, while Defendant offered to settle the case for $145,000 during the trial [Doc. 104 at 18], it is evident that Plaintiff regularly attempted to mediate or settle the case prior to this offer, and was not unreasonable for declining the offer during trial after her counsel's four-year period of representation.

While Plaintiff undoubtedly achieved a successful result, the Court must also consider the overall result in relation to the total hours expended. *See Hensley*, 461 U.S. at 435. Plaintiff requests $271,494.00 in attorney's fees, despite Plaintiff receiving only $28,641.93 in back pay and lost benefits. *See Pittington*, 2017 WL 9251309, at *8 ("The Plaintiff did not receive any front pay, compensatory damages, non-pecuniary damages or punitive damages. Based on the results of this case, the Court simply cannot justify, and finds unreasonable, to award counsel sixteen times the amount awarded to the Plaintiff."). Plaintiff was not awarded compensatory or punitive damages. *See Thurman v. Yellow Freight Sys., Inc.,* 90 F.3d 1160, 1170 (6th Cir. 1996) (holding the district court appropriately reduced the lodestar amount by 5% as Plaintiff was successful on his "claim of failure to hire [under Title VII] and was awarded backpay" but Plaintiff "was not entirely successful" as the jury did not award compensatory and punitive damages, prejudgment

interest, or front pay); *Hawkins v. Ctr. For Spinal Surgery*, No. 3:12-cv-1125, 2017 WL 6389679, at *7 (M.D. Tenn. June 21, 2017) (decreasing the lodestar amount by 15% in Title VII case as the "Defendant is on solid ground to rely upon the substantial difference in the amounts Plaintiff sought in back pay and compensatory damages and the amounts the jury ultimately awarded"); *Wheat v. Benton Cty. Tenn.*, No. 1:08-cv-1171, 2010 WL 908653, at *4 (W.D. Tenn. Feb. 10, 2010) (reducing lodestar amount 40% in Title VII case because "the amount of compensatory damages the jury awarded was substantially lower than what Plaintiff sought[,] . . . there were no punitive damages awarded and Plaintiff recovered judgment on few of the claims she presented, and then, only against one Defendant").

Additionally, the Sixth Circuit rejected Plaintiff's ADA claim related to the failure to engage in the interactive process, and Plaintiff's state law and FMLA retaliation claims were dismissed prior to the trial. *See Abernathy v. Corinthian Coll., Inc.*, No. 2:10-CV-131, 2014 WL 4272723, at *21 (S.D. Ohio Aug. 29, 2014) ("In sum, after more than four years of litigation in two different courts, plaintiff Abernathy lost on summary judgment as to one of her claims in state court, voluntarily dismissed the remaining state court claims, achieved modest evidentiary gains prior to trial in this action and prevailed on one of two claims at trial, resulting in a $3,500 jury award. This limited success warrants a reduction in the hours reasonably expended and fee award."), *report and recommendation adopted by*, 2014 WL 4829612 (S.D. Ohio Sept. 29, 2014).

Based on the foregoing, the Court finds that the verdict and award Plaintiff obtained at trial certainly entitles her to be considered the prevailing party. However, in light of Plaintiff's unsuccessful state law and FMLA claims, the Sixth Circuit's rejection of Plaintiff's failure to accommodate claim, and Plaintiff not receiving compensatory or punitive damages, the Court recommends an additional 10% reduction in the overall attorney's fees to account for Plaintiff's

overall less than complete success. While Plaintiff was not entirely successful, the claims upon which Plaintiff did not prevail were found to be related, and accordingly, the Court finds that this total award with the reduction incorporated fairly represents the time and labor required in this case, the novelty and difficulty of the questions presented, and the amount involved and the results obtained.

### d. Fees for Fees

Plaintiff also requests additional attorney's fees incurred after the jury verdict for hours expended in litigating attorney's fees and other post-trial matters. [Doc. 110]. However, Defendant claims that Plaintiff requests an unreasonable amount of fees, along with an unreasonable hourly rate for Attorney Nelson. [Doc. 112].

"When parties litigate the issue of attorney fees, the additional fees generated by that litigation are termed 'fees for fees.'" *Cotner v. Buffalo & Associates, PLC*, No. 3:11-cv-299, 2012 WL 1670552, at *6 (E.D. Tenn. May 14, 2012) (citing *Lamar Adver. Co. v. Charter Twp. of Van Buren*, 178 F. App'x 498, 502 (6th Cir. 1986)). Prior to August 1, 2016, this Court limited the hours that could be awarded for litigating attorney's fees. Specifically, the Court followed the rule announced in *Coulter v. Tennessee* that limited the amount of attorney's fees awarded to 3% of the hours in the main case when the issue is submitted on the papers without a trial and to 5% of the hours in the case after trial. *Coulter*, 805 F.2d 146, 151 (6th Cir. 1986), *abrogated on other grounds by, The Ne. Ohio Coal. For the Homeless v. Husted,* 831 F.3d 686 (6th Cir. 2016). In abrogating the rule in *Coulter,* the Sixth Circuit held that the "district court can correct any abuses at the fees for fees stage under the 'unreasonableness' standard." *Husted* at 722.

As an initial matter, the Court has already recommended that Attorney Nelson's hourly rate be reduced to $290, and accordingly recommends that this reduced hourly rate be applied to the

hours litigating attorney's fees. Next, of the total 919.9 hours billed by Plaintiff's attorneys in this case, the Court observes that Plaintiff requests 75.7 hours, or approximately 8.2%, as fees for fees. The Court notes that the parties contested attorney's fees and several additional issues in this case, including potential reductions to the lodestar amount, the amount of prejudgment interest, and whether the requested amount of fees for fees was reasonable. In addition, the Court has reviewed the submitted billing entries, and does not find the duplication of work.

While not finding the billing entries to be duplicative, the Court does find the total number of hours billed to be excessive. The Court notes that Attorney Nelson billed approximately 12.1 hours on the Motion for Prejudgment Interest and Plaintiff's Reply to Defendant's Response on the Motion for Prejudgment Interest. Further, Attorney Nelson spent 14.1 hours on the Response to Defendant's Objections to the Bill of Costs, which addressed litigation expenses included as a part of Plaintiff's Bill of Costs. Attorney Nelson billed the majority of the remaining requested time (approximately 50 hours) on Plaintiff's Motion for Attorney's Fees, as well as Plaintiff's Reply to Defendant's Motion for Attorney's Fees.

Ultimately, although Defendant contested several issues, the Court finds that 75.7 hours constitutes an excessive expenditure of time contesting attorney's fees. The Court acknowledges that Defendant's response compelled Plaintiff to substantially brief the motion for attorney's fees, but finds that the overall amount of time, including the time billed litigating the amount of the Bill of Costs and prejudgment interest, is excessive. *See, e.g.*, *Morse v. Specialized Loan Servicing, LLC*, No. 2:16-cv-689, 2018 WL 549372, at *5 (S.D. Ohio Jan. 25, 2018) (reduced Plaintiff's request for fees for fees from 25.8 hours to 12, as "the hours expended preparing the motion was excessive given the $3,000 settlement and straightforward nature of the briefing"), *report and recommendation adopted by*, 2018 WL 1725693 (S.D. Ohio Apr. 10, 2018); *EEOC v. Dolgencorp*,

No. 3:15-CV-441, 2017 WL 9517513, at *6 (E.D. Tenn. Aug. 7, 2017) (where Plaintiff's counsel billed 82.7 hours for fees for fees, recommending reduction of 19.975 hours of time), *report and recommendation adopted by*, 277 F. Supp. 3d 932 (E.D. Tenn. 2017). The Court finds that 75.7 hours (or approximately 9.5 days) is an excessive amount and that 60 hours is a more reasonable expenditure of time given that the parties contested attorney's fees, but that there were no novel issues raised necessitating over nine days of work. Therefore, the Court recommends that 15.70 hours of Attorney Nelson's time claimed as fees for fees be reduced.

### B.    Litigation Expenses

Plaintiff requests that she be awarded litigation expenses pursuant to 42 U.S.C. § 12205, in addition to the taxable costs claimed by Plaintiff in her Bill of Costs. [Doc. 98 at 8–9]. As the Court has previously discussed,[9] Plaintiff's request for litigation expenses will be reviewed based on the $3,085.63 in expenses not addressed in the Bill of Costs—including $2,011.40 in mediator costs; $16.32 for postage; $81.36 for trial/data storage supplies; $184.64 for meals; $225.12 for lodging and meal expenses for travel to Cincinnati for appellate hearing; and $198 for parking and $368.79 in mileage. Defendant claims that Plaintiff seeks reimbursement for unreasonable expenses, including mediation fees, meals during depositions and trial, and trial supplies. [Doc. 104 at 20].

Courts are permitted to award expenses that are "incidental and necessary . . . in furnishing competent representation." *Lankford v. Reladyne, LLC*, No. 1:14-CV-682, 2016 WL 3640691, at *4 (S.D. Ohio June 29, 2016) (other quotations and citations omitted). Such expenses are different than the costs awarded pursuant to 28 U.S.C. § 1920 and include "[r]easonable photocopying, paralegal expenses, and travel and telephone costs." *Id.*

---

[9] *See supra* at note 3.

First, Plaintiff seeks $2,011.40 for the costs of the mediator. [Doc. 98 at 9]. Defendant asserts that this constitutes an unreasonable expense because E.D. Tenn. L.R. 16.4(i) requires the fee for a mediator's service to be "borne equally by the parties to the mediation unless other arrangements are agreed to by the parties." However, while mediation fees are not a taxable expense under 28 U.S.C. § 1920, "they are compensable litigation expenses under the ADA." *Hansen v. Deercreek Plaza, LLC*, 420 F. Supp. 2d 1346, 1355 (S.D. Fla. Mar. 21, 2006) (citing *Clark v. Peco, Inc.*, No. 97-737-HU, 1999 WL 398012, at *12 (D. Or. Apr. 16, 1999); *Robins v. Scholastic Book Fairs*, 928 F.Supp. 1027, 1036–37)); *see also Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013) (finding in Title VII case that "the district court acted within its discretion in finding that [plaintiff's] requested costs for focus groups, mock trials, jury-selection services, and mediation were reasonable and necessary to provide [plaintiff] with effective representation because such services 'conferred a benefit to the prevailing party by helping to produce a favorable result'") (quoting *Sigley v. Kuhn*, 205 F.3d 1341 (Table), 2000 WL 145187, at *9 (6th Cir. 2000)). Accordingly, the Court will recommend that Plaintiff be awarded her requested fees of $2,011.40 for the cost of mediation.

Defendant also objects to the expenses for meals during local depositions and trial that Plaintiff seeks to recover, claiming that Defendant's counsel does not ordinarily charge their clients for meals during local depositions or hearings. [Doc. 104 at 20]. The Court has considered the parties' arguments, and it will not recommend that Plaintiff's requests for expenses for meals be reduced. *See Bryant v. Dollar Gen. Corp.*, No. 3:05-cv-840, 2007 WL 1875825, at *6 (M.D. Tenn. Jun. 26, 2007) ("While amounts paid for meals, parking and mileage are not costs within the meaning of Section 1920, they may be awarded as reasonable out-of-pocket litigation expenses which would be charged to a fee-paying client.").

Finally, Defendant objects to Plaintiff's request for trial supplies, which it claims includes more than seventy dollars for labels. Defendant claims that this expense constitutes overhead, and thus is not ordinarily charged to a client. [Doc. 104 at 20]. "Generally, a party is not entitled to recover expenses that are merely incident to the preparation of cases and are part of office overhead." *Freier v. Freier*, 985 F. Supp. 710, 712 (E.D. Mich. 1997) (citing *McMillan v. United States*, 891 F. Supp. 408, 415–16 (W.D. Mich. 1995); *Knop v. Johnson*, 712 F. Supp. 571, 588 (W.D. Mich. 1989)), *cited with approval in Guevara v. Soto*, No. 3:15-cv-548, 2016 WL 8117955, at *3 (E.D. Tenn. Dec. 20, 2016). Accordingly, the Court will recommend that the request for expenses be reduced by $76.36.[10] *See* [Doc. 98-1 at 34].

## C.    Costs

Plaintiff filed a supplemental brief [Doc. 115], which the Court has construed as an objection to the Clerk's Findings on the Bill of Costs. Following the jury's verdict, Plaintiff submitted a Bill of Costs to the Court on June 25, 2018. [Doc. 94]. In the Bill of Costs, Plaintiff requested $905 for fees of the Clerk, $12.68 for fees for service of summons and subpoena, $2,273.25 for fees for printed or electronically recorded transcripts necessary for the case, $325.78 for fees for printing, $580 for fees for witnesses, and $747.55 for fees for copies of materials necessarily obtained for use in the case—for a total of $4,844.26. [Doc. 94 at 1]. After Defendant filed an Objection to the Bill of Costs [Doc. 102], and Plaintiff filed a Reply to Defendant's Objection [Doc. 108], the Clerk of Court issued its Findings [Doc. 114]. Plaintiff then filed her supplemental brief, objecting to the Findings of the Clerk, and asserting that she should receive

---

[10] Defendant has not contested Plaintiff's additional requested expenses, including the remaining requests for trial and data storage supplies, lodging, parking, and mileage.

the full costs of the requested expenses.  [Doc. 115 at 3].  Defendant then filed a response in opposition.  [Doc. 116].

The Clerk allowed Plaintiff's request for the fees of the Clerk [Doc. 114 at 2], and disallowed the $12.68 requested as service costs [*Id.*].  With respect to costs for deposition transcripts, the Clerk found that the invoice provided by Plaintiff did not detail the cost of each service for the requested depositions and that the invoice labels the transcripts as a copy; therefore, Plaintiff may only be awarded costs up to $0.90 a page for the transcript and court reporter fees for the depositions of Plaintiff and Paul Johnson.  [*Id.* at 3–4].  However, the Clerk allowed Plaintiff $3.65 per page for the original deposition transcripts of Mike Scales, Randall Carr, Heather Jett, Tammy Wood, and Myra Lawhorn, while disallowing the remaining amounts requested as costs because the rates charged are higher than the maximum allowable amount for original copies.  [*Id.* at 4–5].  In addition, the Clerk disallowed the extra fees, including charges for notary fees and postage, requested for Mr. Scales, Mr. Carr, Ms. Jett, Ms. Wood, and Ms. Lawhorn's depositions.  [*Id.*].

Next, the Clerk disallowed the requested $352.78 for disbursement and printing of foam boards used in opening and closing statements, as Plaintiff did not provide any receipts or invoices to support the request and did not seek prior approval from the Court to enlarge a demonstrative exhibit.  [*Id.* at 5].  Additionally, the Clerk found that Plaintiff's requests for witness fees were allowed only up to the $40 set by 28 U.S.C. § 1821, for the one day that each witness testified. [*Id.* at 6].  The Clerk also disallowed several requests for copies as excessive, finding that Plaintiff failed to provide adequate documentation, or that copies were not used as exhibits at trial or furnished to and used by the Court or opposing counsel.  [*Id.* at 8–9].  Therefore, the Clerk allowed Plaintiff $60.20 as costs for copies out of the requested $747.55.  [*Id.* at 9].

Federal Rule of Civil Procedure 54(d)(1) provides that "costs—other than attorney's fees—shall be allowed to the prevailing party." This "language creates a presumption in favor of awarding costs, but allows denial of costs at the discretion of the trial court." *Singleton v. Smith*, 241 F.3d 534, 539 (6th Cir. 2001) (quoting *White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986)). Rule 54(d)(1) costs "are confined to the costs itemized in 28 U.S.C. § 1920." *In re Cardizem CD Antitrust Litig.*, 481 F.3d 355, 359 (6th Cir. 2007). Section 1920 provides that a court may tax as costs the following: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation for court appointed experts and interpreters, as well as costs for certain interpretative services. 28 U.S.C. § 1920.

Ultimately, Plaintiff attempts to object to the Clerk's findings, while also arguing that she should receive the full amount of requested expenses detailed in the Bill of Costs and the Motion for Attorney's Fees and Expenses, "if not under Rule 54(d)(1) then [under] 42 U.S.C. § 12205 and 1988—all of which are passed along to fee-paying clients but denied by the Clerk." [Doc. 115 at 4].

> However, as the Sixth Circuit has explained:
>
> There are two separate sources of authority to award out-of-pocket expenses. Some expenses are included in the concept of attorney's fees as incidental and necessary expenses incurred in furnishing effective and competent representation, and thus are authorized by section 1988 [including reasonable photocopying].
>
> Other costs are on a different footing. These include those costs incurred by a party to be paid to a third party, not the attorney for the case, which cannot reasonably be considered to be attorney's fees. These include, among others, docket fees, investigation expenses, deposition expenses, witness

38

expenses, and the costs of charts and maps. Most of these expenses have long been recoverable in the court's discretion, as costs pursuant to 28 U.S.C. § 1920.

*Sigley v. Kuhn*, 205 F.3d 1341 (Table), 2000 WL 145187, at *9 (6th Cir. 2000) (internal citations and quotation marks omitted).[11] "Under Fed. R. Civ. P. 54(d)(1), costs are taxed by the *clerk*, not the court, and the court becomes involved only if a party objects to the clerk's decision." *See Radcliffe v. Whitlam Label Co., Inc.*, 2008 WL 11355515, at *2 (E.D. Mich. Aug. 13, 2008). Additionally, "[t]he function of the court in the process of taxing costs is merely to review the determination of the clerk. Therefore, nothing normally can come before the court until the clerk has acted and an objection has been made." *Id.* (citing 10 C. Wright & A. Miller, *Federal Practice and Procedure* § 2679, p. 488 (1998)).

Therefore, the Court notes that Plaintiff attempts to recover certain expenses both in his Bill of Costs submitted to the Clerk, and the requested Motion for Attorney's Fees. The Court will first discuss Plaintiff's specific objections to the Clerk's Findings on the Bill of Costs, and then address Plaintiff's general arguments for the costs as litigation expenses.

Plaintiff first challenges the Clerk's disallowance of costs for failing to provide a receipt for out-of-pocket costs for service of process, as well as not providing receipts or invoices supporting the itemized costs for printing or trial demonstratives. However, the Court finds that the Clerk followed the Court's *Guidelines on Preparing Bill of Costs*, as the Clerk found that Plaintiff's expense for printing a 36 x 20 demonstrative exhibit was not reasonable because Plaintiff did not seek prior approval from the Court to enlarge the display. *See* E.D. Tenn. L.R.

---

[11] Although "the ADA contains its own attorney fee provision, which provides that a court, in its discretion 'may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs . . .,'" 42 U.S.C. § 12205, "[c]ourts applying this provision have determined that it should be interpreted in a manner consistent with § 1988." *Falor v. Livingston Cty. Cmty. Mental Health*, No. 5:02-CV-60, 2003 WL 23220759, at *1 (W.D. Mich. Oct. 20, 2003).

39

54.1, *Guidelines* III (J) (stating "[e]nlargements greater than 8 x 10 inches are not taxable except by prior order of the Court"). Further, Plaintiff did not demonstrate how the item was "necessarily obtained for trial." *See King v. Gowdy*, No. 02-CV-75136, 2008 WL 1820837, at *3 (E.D. Mich. Apr. 22, 2008) (finding "documents that were blown-up for use in the closing by Plaintiff's counsel" was not a cost).

Additionally, with respect to the requested copies, the Clerk properly found that Plaintiff's requests for copies were excessive, and did not state how the copies were necessary for trial. Under section 1920 "[c]opies obtained only for the convenience of counsel, including extra copies of filed papers and correspondence, are ordinarily not recoverable." *Charboneau v. Severn Trent Labs.*, No. 5:04–CV–116, 2006 WL 897131, *1 (W.D. Mich. Apr. 6, 2006). After the Clerk denied Plaintiff's request for her out-of-pocket costs for service of process, Plaintiff cites *Pittington* to claim that "testimony is sufficient to establish amount if uncontradicted; documentary proof is not required." [Doc. 115 at 4 (citing *Pittington v. Great Smoky Mountain Lumberjack Feud*, 880 F.3d 791, 806 (6th Cir. 2018))]. Plaintiff also cites to *L.H. v. Hamilton Cty. Dep't of Educ.*, No.1:14-CV-00126, 2019 WL 93276 (E.D. Tenn. Jan. 3, 2019) for a similar argument. [*Id.*].

However, the cases cited by Plaintiff for the proposition that sworn testimony is sufficient justification for the costs claimed do not support her position, and case law supports the Clerk's decision, especially regarding the proof required for copies. While only sworn testimony may be required to prove that costs were actually incurred, further proof may be required to see if the cost "is recoverable as a reasonable and necessary . . . cost." *Vistein v. American Registry of Radiologic Technologists*, No. 1:05-CV-2441, 2010 WL 918081, at *7 (N.D. Ohio Mar. 10, 2010). For example, "*Trepel* [*v. Roadway Express, Inc.*, 266 F.3d 418, 425 (6th Cir. 2001)], cannot stand for the proposition that a prevailing party's bill of costs is suddenly immune from scrutiny simply

40

because counsel has filed an affidavit in which she swears that all costs were reasonably and necessarily incurred. While counsel's affidavit can take the place of receipts as a means of proof, it is not a substitute for a detailed list of expenditures." *Vistein*, 2010 WL 918081, at *7. Instead, the prevailing party must "provide sufficient detail and sufficient documentation regarding those costs in order to permit challenges by opposing counsel and meaningful review by the Court." *Huntsville Golf Dev., Inc. v. Brindley Constr. Co.*, No. 1-08-006, 2011 WL 4960421, at *4 (M.D. Tenn. Oct. 18, 2011) (quoting *Vistein,* 2010 WL 918081, at *4). Accordingly, the Court finds that the Clerk properly found that Plaintiff did not detail how the copies were necessary for trial and that the total number of copies were excessive. Further, the Court finds that Plaintiff failed to provide a receipt for the service of process cost.

Next, Plaintiff seeks the full court reporter expenses related to deposition transcripts after the Clerk found that Plaintiff failed to detail the cost of each service. The Clerk awarded Plaintiff only the maximum allowable amount per page for copies of the deposition and original deposition transcripts, and did not allow the additionally requested extra fees. Pursuant to this Court's *Guidelines*, a prevailing party may only recover as costs up to the maximum fee allowed by the transcript rates adopted by the Judicial Conference. *See* E.D. Tenn. L.R. 54.1, *Guidelines* III(D)(1). The current rates are $3.65 per page for an original transcript and $0.90 per page for a copy, and extra fees charged by the reporters shall not be taxable unless otherwise ordered by the Court. *Id.* While Plaintiff claims that she objected to the Clerk's findings, Plaintiff fails to argue how the Clerk's findings were improper with respect to the deposition transcripts, or why the Clerk should award the full measure of the costs for deposition transcripts. *See* [Doc. 115 at 4]. Defendant correctly states that the Clerk's *Guidelines* note that "[c]osts of deposition transcripts that do not set forth the number of pages or rate per page will not be taxed." [Doc. 102 at 2]. As

41

Plaintiff failed to demonstrate how the additional deposition charges are reasonable, the Court finds that the Clerk properly applied the per page charges authorized by the Judicial Conference.

Lastly, Plaintiff requests the full amount of claimed witness fees for each day that the witness was reasonably required to be in attendance, and a higher amount than the statutorily provided witness fee. [Doc. 115 at 5]. Specifically, Plaintiff requests that she be awarded witness fees for Ms. Jett, Mr. Carr, Mr. Scales, and Ms. Lawhorn for the multiple days that each witness was paid, as opposed to the single day of testimony, as well as the $100 paid to witness John Haines to read deposition testimony to the jury. [Doc. 108 at 4]. Section 1920(3) authorizes a court to award fees for witnesses, and "[t]he witness fee identified in § 1920(3) is defined in 28 U.S.C. § 1821." *Crawford Fitting Co. v. JT Gibbons, Inc.*, 482 U.S. 437, 440–41 (1987). Section 1821(a)(1) requires a witness who attends court or a deposition scheduled under a rule or by order of the court to be paid fees, and authorizes a witness fee of $40 per day, in addition to mileage. 28 U.S.C. § 1821; *see L&W Supply Corp. v. Acuity*, 475 F.3d 737, 738 (6th Cir. 2007) ("Available witness expenses only include attendance, travel, and subsistence fees as specified in 28 U.S.C. § 1821."). "To be clear, the minimal fees authorized by § 1920(3) and § 1821(b) are established by statute and paid simply for attendance, while the fees authorized under § 2000e-5(k) are for the rates charged by the expert." *Lensing v. Potter*, No. 1:03-cv-575, 2015 WL 10892073, at *15 (W.D. Mich. Aug. 20, 2015). Therefore, the Court finds that Plaintiff has not demonstrated that she is entitled to the additional requested amount for witness fees.

Additionally, in her Motion for Attorney's Fees, Plaintiff requests expenses that are "costs incurred by a party to be paid to a third party," and thus properly examined as costs determined by the Court under 28 U.S.C. § 1920. *Sigley v. Kuhn*, 205 F.3d 1341 (Table), 2000 WL 145187, at *9 (6th Cir. 2000). "Because the award of costs is limited to those enumerated by the statute,

42

'there is a presumption that those costs not expressly authorized by § 1920 are precluded.'" *Lensing*, 2015 WL 10892073, at \*11 (citing *Segovia v. Montgomery Cty, Tenn.*, 593 F. App'x 488, 493 (6th Cir. 2014) (involving a request for costs under § 1988 for expenses recoverable only under § 1920)).

However, Plaintiff has "not provided sufficient legal justification for an award of expenses allowable under 42 U.S.C. § 1988 [ or § 12205] and [has] not provided sufficient documentation for an award of costs allowable under 28 U.S.C. § 1920." *Doherty v. City of Maryville*, No. 3:07-cv-157, 2009 WL 3241715, at \*11 (E.D. Tenn. Sept. 30, 2009). Plaintiff's requests for costs for court reporter expenses, service of process, photocopies, printing, and witness fees seek costs expressly enumerated by statute under 28 U.S.C. § 1920. "In the Eastern District of Tennessee, the Clerk of Court is charged with assessing these costs after a Bill of Costs has been properly filed." *Campbell v. Graham*, No. 3:06-CV-444, 2010 WL 4628533, at \*3 (E.D. Tenn. Aug. 18, 2018), *report and recommendation adopted by*, 2010 WL 4628650 (E.D. Tenn. Nov. 04, 2010); *see* E.D. Tenn. L.R. 54.1. Therefore, the Court finds that Plaintiff has not demonstrated any error with the Clerk's Findings, and also is not entitled to the requested expenses under 42 U.S.C. § 12205.

### D.    Pre-Judgment Interest

Plaintiff requests $6,172.52 in prejudgment interest for the operative time period of February 21, 2014 through June 4, 2018, which is based on an interest rate of 5%, compounded annually. Plaintiff claims that the requested 5% rate is reasonable due to the case-specific factors that the Court must consider when determining the rate of prejudgment interest. Defendant asserts that Plaintiff's motion should be denied, but proceeds to argue that in the event a prejudgment award is deemed appropriate, an interest rate of 2.27 % compounded annually for 4.3 years, for a

total amount of $2,690.59[12] would more than make Plaintiff whole.  [Doc. 103 at 2].  Defendant maintains that an award of 5% would be improper because Plaintiff failed to present evidence regarding her saving or investment habits or any interest earned by her during the operative period that would support such rate and further asserts that it would result in a windfall for Plaintiff.

### 1.    Award of Prejudgment Interest

"Prejudgment interest is an element of complete compensation."  *West Virginia v. Unites States*, 479 U.S. 305, 310 (1987).  One purpose of a prejudgment interest award is to compensate a plaintiff for the lost interest value of money wrongly withheld.  *See Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 985 (6th Cir. 2000).  The Sixth Circuit has "long recognized that the district court may [award prejudgment interest] at its discretion in accordance with general equitable principles." *Id.* (quoting *Ford v. Uniroyal,* 54 F.3d 613, 616 (6th Cir. 1998)).  "Awards of prejudgment interest are compensatory, not punitive, and a finding of wrongdoing by the defendant is not a prerequisite to such an award."  *EEOC v. Kentucky State Police Dept.,* 80 F.3d 1086, 1097–98 (6th Cir. 1996) (quoting *Tiemeyer v. Community Mut. Ins. Co.,* 8 F.3d 1094, 1102 (6th Cir. 1993)).

Further, the Court has held that, ordinarily it is an abuse of discretion for a district court "*not* to include prejudgment interest in a back-pay award."  *Id.* at 1098 (quoting *Clark v. Frank,* 960 F.2d 1146, 1154 (2d. Cir. 1992) (emphasis added in *Clark*)).  "While district courts may fashion an award [of prejudgment interest] in their sound discretion, such an award must consider the case-specific factors such as, but not limited to: the remedial goal to place the plaintiff in the position that he or she would have occupied prior to the wrongdoing; the prevention of unjust enrichment on behalf of the wrongdoer; the lost interest value of money wrongly withheld; and

---

[12] *See supra* at note 6.

the rate of inflation." *Schumacher v. AK Steel Corp. Retirement Accumulation Plan,* 711 F.3d 675, 687 (6th Cir. 2013).

In considering whether an award of prejudgment interest to Plaintiff is proper in this case, it is noted that from February 21, 2014 until the date of judgment on June 4, 2018, Plaintiff received no payment from Defendant. A jury determined that defendant discriminated against Plaintiff in violation of the ADA and awarded backpay in the amount of $19,855.43 and $8,786.50 in lost benefits for the operative time period. [Doc. 86]. Plaintiff was not compensated for a period spanning 4.3 years, and during that time, she was denied access to funds to which she was legally entitled.

An award of "prejudgment interest is usually appropriate to make a discrimination plaintiff whole." *Thurman v. Yellow Freight Systems, Inc.* 90 F.3d 1160, 1170 (6th Cir. 1996). "[The Sixth Circuit] commonly awards prejudgment interest on back pay awards." *Id.* (citing *EEOC v. Wilson Metal Casket Co.,* 24 F.3d 836, 841-42 (6th Cir. 1994) (citations omitted). However, prejudgment interest is not appropriate for periods of delay specifically attributable to the plaintiff. *See Shore v. Federal Express Corp.,* 42 F.3d 373, 380 (6th Cir. 1994).

Here, Plaintiff was awarded back pay on her claim of discrimination under the ADA. She was deprived of the use of wrongfully withheld funds during the course of several years of litigation, and there is nothing in the record to indicate that Plaintiff was unreasonably dilatory or delayed the case. As noted above, the decision to award prejudgment interest is one of equity, and of which the Court has considerable discretion. While Defendant attempts to argue that no award should be given in this case because Plaintiff failed to demonstrate that Defendant achieved a windfall in failing to pay her wages and benefits, this argument is unreasonable because no award of prejudgment interest would result in unjust enrichment to Defendant and a frustration of the

remedial goals. Accordingly, given that Plaintiff was deprived of the lost interest value of pay withheld from her for over four years, the Court finds that an award of prejudgment interest is appropriate in this case, and the Court will now consider what amount is due.

### 2. Calculation of Prejudgment Interest

Because there is no federal prejudgment statute, federal courts have broad discretion to select the rate of prejudgment interest. *SEC v. Conaway,* 695 F. Supp. 2d 534, 548 (E.D. Mich. February 25, 2010) (citing *SEC v. First Jersey Secs., Inc.,* 101 F.3d 1450, 1476 (2d Cir. 1996)). The federal statutory postjudgment rate set forth in 28 U.S.C. § 1961 has been deemed a reasonable method for calculating prejudgment interest awards. *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 619 (6th Cir. 1998). However, a "mechanical application" of that rate has been deemed an abuse of discretion absent consideration of case specific facts. *Schumacher v. AK Steel Corp.,* 711 F.3d 675, 685–86 (6th Cir. 2013). In *Schumacher*, the Sixth Circuit explained that "[a] proper determination involves a consideration of various case-specific factors and competing interests to achieve a just result." *Id.*

In support of her motion, Plaintiff sets out numerous rates of interest in effect during the operative time period of February 2014 and June 2018. [Doc. 96 at 4–5]. Plaintiff notes that the average rate of inflation increased from 0.92% in 2014 to 2.8% in 2018 and that the costs of consumer goods increased by 7.16% during that same period. At the time of judgment, Plaintiff states that the § 1961 rate was 2.28%; the bank prime loan rate was 4.75%; the 24-month finance rate for a personal loan at a commercial bank was 10.22%;[13] and as of April 2018, the average rate of a 48-month car loan was 4.74%. [*Id.*].

---

[13] Plaintiff notes this was the rate as of April 2018, which was the last published rate prior to the judgment. [Doc. 96 at 4].

46

After surveying these rates, Plaintiff does not suggest that any of them be used for the calculation of her prejudgment interest. Instead, Plaintiff submits that 5% is reasonable compensation to make her whole, noting it is the same rate recently applied in another case in this district. In *Bristol Anesthesia Servs., P.C. v. Carilion Clinic Medicare Res.*, the Court applied a 5% rate, but specifically noted that "neither party discussed any of the fairness or equity factors that the Court should consider in making this [interest rate] determination." No. 2:15-cv-17, 2018 WL 2976289, at *4 (E.D. Tenn. June 13, 2018). While the Court determined 5% fair in that particular case, the Court must consider the *Schumacher* factors in determining an award that balances the interests in this case, because not all factors will weigh evenly in all cases. *See Pittington v. Great Smoky Mountain Lumberjack Feud, LLC,* 880 F.3d 791, 807 (6th Cir. 2018). In each case, the Court must evaluate those factors, analyzing the various methods and applicable rates in effect at the time, and make an award that is fair under the circumstances. *Id.*

Defendant counters with a survey of additional rates in effect during the operative time period, including the average savings deposit rates for amounts under $100,000 at 0.06% APY in February 2014 and 0.08% APY in June 2018; average certificate of deposit rates for 48-month CDs at 0.58% APY in February 2015 and 0.83% APY in June 2018; and the prime rate at 3.25% as of February 2014. [Doc. 103 at 2]. Defendant disputes the § 1961 rate cited by Plaintiff, asserting that is was 2.27% rather than 2.28%, and maintains that "an annually compounded rate of interest less than three percent maintains the judgment's purchasing power." [*Id*. at 1–2, 5]. Defendant argues that Plaintiff failed to present any evidence that she would have or could have earned 5% interest on the award and that the postjudgment interest rate of 2.27% compounded annually for 4.3 years, yields Plaintiff an additional $640.23 over the amount necessary to maintain

47

her purchase power and $30.07 less than the interest she would have earned from a 48-month certificate of deposit. [*Id.* at 5].

In taking all of these rates into consideration, the Court initially notes that the § 1961 rate at the time of the judgment in the present case was 2.27%. *See* Bd. of Governors of the Fed. Reserve Sys., *Federal Reserve Statistical Release: H.15 (519) Selected Interest Rates* (June 4, 2018), https://www.federalreserve.gov/releases/h15/. Defendant's borrowing costs at that same time was much higher at 4.75%, which presents a disparity that would result in an unfair economic benefit to Defendant if it were only required to pay the 2.27%. At the same time, the Tennessee money judgment rate, which allows for a maximum rate of 10% annually, is much higher than Defendant's borrowing costs, and absent justifying factors would result in an interest award that would be punitive. Tenn. Code Ann. § 47-14-123.

In further considering the application of federal postjudgment interest rate of 2.27%, the Court recognizes that it essentially only compensates Plaintiff for the rate of inflation,[14] which has been determined to be an abuse of discretion. *United States v. City of Warren*, 138 F.3d 1083, 1096 (6th Cir. 1998) (holding an award of prejudgment interest that only compensated the plaintiffs for the rate of inflation constituted an abuse of discretion where it failed to adequately compensate for the lost use of their money). Since the 2.27% only results in an adjustment of the dollars Plaintiff would have earned in past years to compensate for their diminished purchasing power resulting from inflation, the Court finds this rate to be insufficient to compensate Plaintiff for her inability to use the money in the intervening time and does not make Plaintiff whole.

---

[14] This is the focus of Defendant's argument that the postjudgment rate of 2.27% yields Plaintiff an additional $640.23 over the amount necessary to maintain her purchasing power. *See supra* at note 6.

Moreover, such inadequate compensation would frustrate the purpose of the ADA's remedial goals.

Therefore, in this case, the Court finds that a rate of 4%, compounded annually, best approximates the present value of the money lost to Plaintiff and strikes a balance between not imposing a punitive measure but ensuring Defendant does not benefit from its wrongful withholding. This rate represents an average of the prime rates submitted by the parties of 3.25% in 2014 and 4.75% in 2018. "Our court and others have … upheld awards of pre-judgment interest that were tied to prevailing market rates, thus reflecting what the defendants would have had to pay in order to borrow the money at issue." *Rybarczyk v. TRW, Inc.,* 235 F.3d 975, 986 (6th Cir. 2000)*; see Ryl-Kuchar v. Care Centers, Inc.,* 564 F. Supp. 2d 817 (N.D. Ill. June 16, 2008) (finding back pay interest should be calculated by compounding monthly the prime rate set by the Federal Reserve during the month in which interest is sought). While a more exact calculation could be made based on compounding interest during each month Plaintiff missed a paycheck, the parties did not provide any detailed calculations with figures for the entire period, and using a blended rate compounded annually for the time period between February 21, 2014 and date of judgment will sufficiently account for Plaintiff's loss use of the funds while serving ADA's remedial purposes and avoiding unjustly enriching Defendant.

This rate is fair despite Plaintiff demonstrating what she would have done with the money during the operative time period. Contrary to Defendant's argument, Plaintiff is not required to make such a showing, but some detail would have been helpful to the Court in analyzing what prejudgment rate would fully compensate her. *See Pittington v. Great Smoky Mountain Lumberjack Feud, LLC,* 880 F.3d 791, 808 (6th Cir. 2018) (citing *United States City of Warren*, 138 F.3d 1083, 1096 (6th Cir. 1998) (internal quotations omitted)). But "[t]here is no indication

49

that the phrase 'make whole' requires a detailed evidentiary demonstration of what use the [plaintiff] would have made of the money had he received it, and there is no precedent in the Sixth Circuit that such a showing is required . . . in civil litigation." *Rochow v. Life Ins. Co. of N. Am.*, No. 04-73628, 2016 WL 5476240, at *4 (E.D. Mich. Sept. 29, 2016), *reconsideration denied*, No. 04-73628, 2017 WL 4236594 (E.D. Mich. Sept. 25, 2017).

Here, the Court has considered the *Schumacher* factors and determined that the application of the § 1961 postjudgment interest rate would be insufficient. Instead, the Court recommends the application of the blended prime rate of 4%, compounded annually for a period of 4.3 years, to best serve the dual goal of ensuring proper compensation for the money lost by Plaintiff and preventing unjust enrichment by Defendant. Accordingly, the total prejudgment interest award recommended is $5,261.66.

## IV. CONCLUSION

For the reasons explained above, the Court **RECOMMENDS**[15] that the Plaintiff's Motions [**Docs. 95, 97**] be **GRANTED IN PART AND DENIED IN PART**. Specifically, the Court **RECOMMENDS** that the Plaintiff be awarded a total amount of $212,564.25 in attorney's fees, $3,009.27 in litigation expenses, and $5,261.66 in prejudgment interest. Further, the Court **RECOMMENDS** that the District Judge affirm the Findings of the Clerk regarding Plaintiff's Bill of Costs. The Court arrives at the calculation for attorney's fees as follows:

---

[15] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).

| Attorney/Paralegal | Hourly Rate | Requested Hours | Fees for Fees Reduction | Total Fee |
|---|---|---|---|---|
| Jesse D. Nelson (Attorney) | $290 | 687.30 | 15.70 | $194,764.00 |
| Kayla L. Towe (Attorney) | $210 | 130.70 | n/a | $27,447.00 |
| Kayla M. Swiney (Served in attorney and paralegal role) | $175 – attorney $85 – paralegal | 59 25.10 | n/a | $10,325.00 $2,133.50 |
| Karla Gander and Ashley James (Paralegals) | $85 | 17.8 | n/a | $1,513.00 |
| | | **919.90** | **15.70** | **$236,182.50** |
| **Lodestar Reduction (10 %)** | | | | **$23,618.25** |
| **Total Fee** | | | | **$212,564.25** |

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge